UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIELA KAPUSTA,

     Plaintiff,

v.                                 CASE NO.:

CITY OF MADEIRA BEACH,
A Government Agency,

     Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY

Plaintiff, DANIELA KAPUSTA ("Plaintiff"), by and through the undersigned attorney, sues the Defendant, CITY OF MADEIRA BEACH ("COMB") and in support thereof states as follows:

## INTRODUCTION

1.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) and 29 U.S.C. §§ 2(a) and 207(a).

2.    The Fair Labor Standards Act was passed in 1938. Its principle purpose was to protect all covered workers from substandard wages and oppressive working hours, labor conditions that are detrimental to the maintenance of minimum standards of living necessary for health, efficient, and the general well-being of workers. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444 (1981).

3.     Section 7(a) of the FLSA requires payment of time-and-one-half an employee's regular hourly rate whenever a covered employee works in excess of forty (40) hours per work week. 29 U.S.C. § 207(a).

4.     The liquidated damages provision of the FLSA constitutes a congressional recognition that failure to pay the statutory minimum on time may be so detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and the general well-being of workers and to the free flow of commerce, that double payment must be made in the event of a delay in order to insure restoration of the worker to that minimum standard. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08, 65 S.Ct. 895, 902 (1945).

5.     To the extent any partial payments have been made by Defendant to Plaintiff of the disputed amounts at the time of the filing of this complaint, this action seeks to recover judgment in favor of Plaintiff and against Defendant as well as all remaining damages, including but not limited to liquidated damages and reasonable attorneys' fees and costs. *Id.*

## JURISDICTION

6.     Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, et *seq.*, hereinafter called the "FLSA") to recover unpaid back wages, an additional equal amount as liquidated damages, obtain declaratory relief, and reasonable attorney's fees and costs, as well as recover damages for retaliation under 29 U.S.C. §215(a)(3).

7.     The Jurisdiction of the Court over this controversy is based upon 28 U.S.C. §1331 and 29 U.S.C. §216(b).

## PARTIES

8.     At all times material hereto, Plaintiff was and continues to be a resident of Pinellas County, Florida.

9.     Plaintiff was employed by Defendant as an hourly paid Recreation Leader II from on or around April 3, 2018, to when she was officially terminated on October 18, 2019.  However, the last date Plaintiff physically worked for Defendant was June 21, 2019.

10.     At all times material during the last three years, COMB was and continues to be a governmental agency for the City of Madeira Beach, Pinellas County, Florida.  Further, at all times material hereto, COMB was and continues to be engaged in business in Florida, with a place of business in Pinellas County, Florida.

## COVERAGE

11.     At all times material hereto (the last three years), Plaintiff was "engaged in commerce" within the meaning of §6 and §7 of the FLSA.

12.     At all times material hereto (the last three years), Plaintiff was an "employee" of Defendant within the meaning of FLSA.

13.     At all times material hereto (the last three years), Defendant was the "employer" within the meaning of FLSA.

14.     At all times material hereto, COMB was and continues to be an enterprise engaged in the "production of goods for commerce," within the meaning of the FLSA.

15.     Based upon information and belief, the annual gross revenue of Defendant was in excess of $500,000.00 per annum during the relevant time periods.

16.     At all times material hereto (the last three years), COMB was and continues to be "an enterprise engaged in commerce," or in the production of goods for commerce within the meaning of Section 203(s)(1) of the FLSA, in that the company had two or more employees:

      a.  Engaged in commerce; or

      b.  Engaged in the production of goods for commerce; or

      c.  Handling, selling or working on goods or materials that have been moved in or produced for commerce. (i.e. office supplies, computers, telephones, desks, and/or facsimile machines).

17.     Therefore, Defendant is an enterprise covered by the FLSA, and as defined by 29 U.S.C. §203(r) and 203(s).

## STATEMENT OF FACTS

18.     On or about April 3, 2018, Defendant hired Plaintiff to work as a Recreation Leader II.

19.     Plaintiff was a non-exempt hourly paid employee.

20.    Plaintiff routinely worked for Defendant in excess of forty (40) hours within a work week as part of her job duties.

21.    At the beginning of her employment, Plaintiff was verbally instructed by the Director of Recreation, Jay Hatch (hereinafter "Director") that Defendant has a policy to avoid paying overtime compensation as it would affect his department's budget.

22.    Director encouraged Plaintiff to keep a "secret" personal log of her overtime hours worked to be paid at her regular hourly rate should she ever work under forty (40) hours in a subsequent work week.

23.    Plaintiff was told to use the overtime hours recorded in her secret personal log to "flex out" her hours so that Defendant could avoid paying overtime compensation.

24.    Director explained to Plaintiff that to "Flex out" hours meant that if Plaintiff worked more than forty (40) hours in one work week, then Plaintiff was not to submit those hours on her timesheet and was to instead add those hours to a "secret" log of banked overtime hours worked.  Then, when Plaintiff worked less than forty (40) hours in a different work week, Plaintiff was to manipulate her timesheets by adding her "secret" banked overtime hours previously worked so that those hours would be paid at only her regular hourly rate of pay.

25.    In fact, on at least one occasion, Director memorialized this policy in writing by stating that, "I like to allow everyone the opportunity to flex out their

hours as needed <u>within each two week period, as recommended by HR to avoid overtime.</u>" *See* February 20, 2019 email attached hereto as **Exhibit "A"**.

26.    To illustrate, if Plaintiff worked 50 hours during one work week and, then 30 hours in the second work week, Plaintiff was instructed to manipulate her timesheets to reflect only forty (40) hours for each work week to avoid the payment of overtime.

27.    As a result of these policies, Plaintiff was not properly compensated her overtime pay under the FLSA.

28.    Plaintiff should have been compensated at the rate of one and one-half times Plaintiff's regular rate for those hours that Plaintiff worked in excess of forty (40) hours per week, as required by the FLSA.

29.    On several occasions, Plaintiff complained to Director regarding her overtime hours worked.

30.    For example, on or around February 24, 2019, Plaintiff emailed Director explaining that the long hours she was required to work already required her to "flex out" her hours and seeking additional guidance on how to track and submit her additional overtime hours each pay period to avoid Defendant's no overtime policy. *See* February 24, 2019 email attached hereto as **Exhibit "B."**

31.    Throughout her employment, Plaintiff continued to complain to Director, but no corrective actions were ever taken.

32.    On or around March 11, 2019, Plaintiff notified Karen Paulson, in Defendant's Human Resources Department ("HR), about the "secret" personal

logged/banked overtime hours she was told by Director to maintain and Defendant's failure to compensate her for same.  HR dismissed Plaintiff's complaint and told Plaintiff to take it up with Director.

33.    Immediately following Plaintiff's complaint to HR her work environment quickly deteriorated.

34.    For example, on May 29, 2019, Director gave Plaintiff her first written poor performance review.

35.    On May 29, 2019, Director placed Plaintiff on a ninety (90) day performance improvement plan.

36.    Plaintiff never received documentation outlining what the "performance improvement plan" entailed.

37.    On or around June 21, 2019, prior to the conclusion of the ninety (90) day improvement plan period and despite Plaintiff not receiving any additional negative feedback from Director/Defendant, Plaintiff was informed by HR that Director was recommending Plaintiff be terminated.

38.    During the June 21, 2019 meeting Plaintiff was given two options by HR: (1) accept the termination; or (2) elect to forcibly resign.

39.    Plaintiff requested from Defendant official documentation regarding her termination and was then told that she was placed on "involuntary leave."

40.    On or around June 24, 2019, Plaintiff filed a formal grievance with the City Manager, advising the City Manager of Defendant's improper policy/practice to avoid paying overtime and the retaliatory conduct that followed Plaintiff's

complaints to Defendant (including to HR and Director) regarding such improper policy/practice.

41.     On August 2, 2019, Defendant provided Plaintiff with a check to compensate her for a portion of the unpaid overtime hours alleged by Plaintiff.

42.     On August 13, 2019, undersigned counsel provided a letter to Defendant notifying Defendant of her representation of Plaintiff regarding claims of additional unpaid overtime pay and retaliation under the FLSA.

43.     At 11:56am on October 9, 2019, undersigned counsel provided counsel for Defendant with a detailed letter outlining Plaintiff's claims and attaching proof of same.

44.     At 3:23pm on October 9, 2019, Defendant emailed a letter directly to Plaintiff reinstating Plaintiff as an active employee, suspended with pay, effective October 9, 2019, and pending her attendance at a pre-disciplinary meeting to take place on October 17, 2019.

45.     On October 18, 2019, following the October 17, 2019 meeting, Defendant issued a letter to Plaintiff terminating her employment effective October 21, 2019.

46.     Other than the August 2, 2019 check to cover a portion of her unpaid overtime hours worked and a check in January 2020 to cover unused vacation and sick pay, Plaintiff has not received any wage compensation whatsoever since June 21, 2019.

47.     Based upon the above practices, Defendant violated the FLSA by failing to pay Plaintiff proper overtime pay for all hours worked.

48.     Based on upon the above practices, Defendant violated the FLSA by retaliating against Plaintiff for pursuing her right to unpaid overtime wages.

## COUNT I
## VIOLATION OF 29 U.S.C. §207 OVERTIME COMPENSATION

49.     Plaintiff re-alleges and reavers paragraphs (1) through (48) of the Complaint, as if fully set forth herein.

50.     From on or around April 3, 2018, until June 21, 2019, Plaintiff routinely worked in excess of forty (40) hours per week for which Plaintiff was not compensated at the statutory rate of one and one-half times Plaintiff's regular rate of pay for each of her overtime hours worked.

51.     Plaintiff was and is entitled to be paid at the statutory rate of one and one-half times Plaintiff's regular rate of pay for each hour worked in excess of forty (40) hours per work week.

52.     Defendant had knowledge of the overtime hours worked by Plaintiff.

53.     Defendant's actions were willful and/or showed reckless disregard for the provisions of the FLSA, as evidenced by its failure to compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular rate of pay for the hours worked in excess of forty (40) hours per weeks when it knew, or should have known, such was, and is due.

54.    Defendant failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

55.    Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff suffered and continues to suffer damages and lost compensation for time worked over forty (40) hours per week, plus liquidated damages.

56.    Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

**WHEREFORE**, Plaintiff, DANIELA KAPUSTA, demands judgment against Defendant for the payment of all unpaid overtime wages for which Defendant did not properly compensate her, liquidated damages, reasonable attorneys' fees and costs incurred in this action, and any and all further relief that this Court determines to be just and appropriate.

## COUNT II
## RETALIATION IN VIOLATION OF §215(a)(3)

57.    Plaintiff re-alleges and reavers paragraphs (1) through (48) of the Complaint, as if fully set forth herein.

58.    Plaintiff complained regarding her overtime hours worked and Defendant's policy that fails to pay proper overtime compensation.

59.    Shortly after Plaintiff's complaints, Plaintiff's work environment deteriorated.

60.    Despite no history of disciplinary action, write-ups, and/or poor performance reviews, Plaintiff received a written poor performance review and was

placed on a ninety (90) day performance improvement plan as retaliation for her complaints related to unpaid overtime.

61.    On June 21, 2019, less than thirty (30) days into the ninety (90) day period, Director recommended Plaintiff be terminated as retaliation for her complaints related to unpaid overtime.

62.    Plaintiff was not permitted to return to work as of June 21, 2019 as retaliation for her complaints related to unpaid overtime.

63.    After Plaintiff advised Defendant that she retained counsel to represent her regarding her unpaid overtime pay and retaliation under the FLSA, Defendant briefly reinstated Plaintiff's employment on October 9, 2019, only to terminate her on October 21, 2019, as retaliation for her complaints related to unpaid overtime.

64.    Defendant discriminated and retaliated against Plaintiff because she complained about Defendant's unlawful pay practices.

65.    Defendant's retaliatory and discriminatory conduct towards Plaintiff was willful as Defendant knew or should have known that its actions were in violations of 29 U.S.C. §215(a)(3).

66.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been damaged.

67.    Plaintiff is entitled to an award of attorney's fees and costs pursuant to 29 U.S.C. §216(b).

**WHEREFORE**, Plaintiff, DANIELA KAPUSTA, seeks a judgment for

Plaintiff and against Defendant for violation of 29 U.S.C. §215(a)(3); as well as back pay, an equal amount in liquidated damages, front pay, compensatory damages, punitive damages, reasonable costs and attorneys' fees and all other equitable relief this Court deems just.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable as a matter of right by jury.

Respectfully submitted this 28 day of April, 2020.

for

Kimberly De Arcangelis, Esq.
Bar No.: 025871
Ryan D. Naso, Esq.
Bar No.:1010800
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3383
Email:      kimd@forthepeople.com
Trial Attorneys for Plaintiff

# EXHIBIT "A"

Let me know when you have time to discuss.

I greatly appreciate your help.

Regards,

Daniela Kapusta

Recreation Leader II

City of Madeira Beach

200 Rex Place I (727) 392-0665

www.Madbeachfun.com

---

**From:** Hatch, Jay
**Sent:** Wednesday, February 20, 2019 4:08 PM
**To:** Daniela Kapusta
**Subject:** Items To Address

Daniela,

When you return we need to address the following items:

**Fitness Class Financials** - The classes need to be input in the system daily. I had to complete the classes dated as far back at 2/11 today, the does not align with our financial procedures.

**Flyer Distribution** - In our department head meeting last Monday, I asked that these be distributed and it was confirmed by you that they would be out by the end of the week. We had to send other staff to take them around town as they were all still sitting in the box this morning.

**Rentals** - Today we had to track down the details for the Social Security rental due to the fact that they were not prepared and made available for the staff who was assigned to work. Additionally, we had to confirm with Maddie that she would work the event as she was not informed about it ahead of time.

**Time Management** - I like to allow everyone the opportunity to flex out their hours as needed within each two week period, as recommended by HR to avoid overtime. With that in mind, you need to be certain that you are correctly tracking your time while flexing these hours out. The weeks I had you provide your schedule, there were numerous occasions in which the times were not matching up to when you were and were not here. Additionally, when I have that schedule, I use it to determine when staff is going to be around so being later or leaving earlier than you had indicated creates an issue with staff coverage in the building.

Lastly, seeing that the items above are not complete, it is concerning to see that you need to flex out hours to get things completed. I like to provide all of us the freedom to get our tasks done within our own workflow styles, but it is approaching the point where we may need to take additional measures to ensure work is getting done. My hope is you take this as an opportunity to step up and ensure these and other things are getting done in the future. It is my expectation that we all work together on stuff so if you need help, please let me or anyone else know.

Thank you.

Jay Hatch

Director of Recreation

City of Madeira Beach

727-392-0665

MadBeachFUN.com

# EXHIBIT "B"

 Gmail

Daniela Kapusta <dancingsaintsginger@gmail.com>

---

## FW: Items To Address
1 message

---

**Daniela Kapusta** <DKapusta@madeirabeachfl.gov>                              Fri, Jun 21, 2019 at 10:51 AM
To: "dancingsaintsginger@gmail.com" <dancingsaintsginger@gmail.com>

Should you have any questions, please feel free to contact me via email or phone.

Regards,

Daniela Kapusta

Recreation Leader II

City of Madeira Beach

200 Rex Place I (727) 392-0665

www.Madbeachfun.com

**From:** Daniela Kapusta
**Sent:** Sunday, February 24, 2019 9:29 PM
**To:** Hatch, Jay <jhatch@madeirabeachfl.gov>
**Subject:** Re: Items To Address

Jay,

I enjoy working with everyone, and am always willing to step up and help wherever and whenever I can. Doing so puts me over my max hours and then I need to flex out. Especially if I need to be there in the morning for class check-in, during the day for desk/phone coverage, and to help counselors in the late afternoons. I will escalate for you to resolve scheduling challenges for coverage and getting everything you need me to get done.

I wanted to provide some background:

For **Fitness Class Financials**, I was waiting for Finance answers from you before inputting.

**Flyer Distribution** is one of those priority issues, because leaving the office would have created a coverage issue I should have escalated to you. Especially, with the tournament last week.

I asked Maddie about availability to work the **Rental**, she confirmed, and I put her name on the board. If I am missing a step, or we need a new process, let's figure that out. I have some ideas.

I have been willing to adjust my schedule, sometimes daily, to address all requests and activities. This impacts assigned tasks and my personal schedule. I need to better understand how you want me to track and submit my hours for each period to avoid the city policy of no overtime. Are there any tips or rules you can email me for future reference around **Time Management**.